IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
8/18/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

| | | |
|---|---|---|
| JONATHAN PARIS GOLDSMITH | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:26-cv-00363 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPARTMENT OF CORRECTIONS, | ) | By: Hon. Thomas T. Cullen<br>United States District Judge |
| | ) | |
| | ) | |
| Defendant. | ) | |

---

Plaintiff Jonathan Paris Goldsmith ("Goldsmith") brought this action against his former employer, Defendant Virginia Department of Corrections ("VDOC"), after he was fired from his position as a correctional officer. After experiencing a flare-up in a chronic health condition, he stopped reporting to work and informed his supervisors that he had initiated a short-term disability claim. Goldsmith's short-term disability leave was denied and he was given a return-to-work order; when he did not ultimately return to work, VDOC terminated his employment for unexcused absences. Goldsmith now brings three claims under the Rehabilitation Act of 1973 ("Rehabilitation Act") against VDOC, alleging disability discrimination, retaliation, and failure to accommodate. VDOC has moved to dismiss the complaint in its entirety or, in the alternative, to strike Goldsmith's demand for a jury trial. For the reasons discussed below, the court will grant the motion to dismiss as to the disability-

discrimination and failure-to-accommodate claims but deny it as to his retaliation claim. The court will also grant the motion to strike[1] the jury trial demand.

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The following facts are recited as Goldsmith alleges them in his amended complaint, and, at this stage, the court accepts the allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Goldsmith suffers from a chronic health condition[2] that affects his daily life, manifesting in flare-ups that affect ambulation, standing, breathing, and concentrating. (Compl. ¶ 11 [ECF No. 1].) He has received medical treatment for this condition and, at all times pertinent to this action, was acting under the direction of his treating physician. (*Id.*)

VDOC hired Goldsmith on July 10, 2023, to be a Correctional Officer at the River North Correctional Facility located in Independence, Virginia. (*Id.* ¶¶ 3, 8.) In June 2025, he experienced a flare-up in his condition and, under the care of his physician, he tried multiple medications to manage his disability. (*Id.* ¶ 12.) His health condition ultimately required him to take leave, and on June 20, 2025, he completed and returned a Virginia Sickness and Disability Program ("VSDC") to VDOC's human resources office. (*Id.* ¶ 15, Br. in Supp. Mot. Dismiss Ex. B [ECF No. 10-2].[3]) Because VDOC uses a third-party management system to

[1] Though VDOC did not style its argument that the jury trial request be stricken as a motion to strike, the court will treat it as such.

[2] Goldsmith did not disclose what his condition is, but the VDOC does not challenge that he suffers from a qualifying disability—at this stage. (*See* Def.'s Reply Br. at 2 n.1 [ECF No. 12].)

[3] VDOC attaches several documents to its brief in support of its motion to dismiss. A Rule 12(b)(6) motion to dismiss "'tests the sufficiency of a complaint,' and [a court's] evaluation is thus generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). A court may, however, consider a document that is explicitly incorporated into the complaint by reference and/or attached to the complaint as

administer certain employment-related benefits like short-term disability, Goldsmith also communicated with the third-party administrator and provided it with information, forms, and medical documentation in support of his request. (Compl. ¶¶ 13, 16, 18.) The third-party administrator denied his accommodation request, citing a need for more information. (*Id.* ¶ 20.) Goldsmith provided supplemental information, but the third-party administrator denied his leave request a second time. (*Id.* ¶ 22.)

On July 18, 2025, VDOC sent Goldsmith a letter (the "July 18 Letter") informing him that his short-term disability claim was still in pending status and notifying him that he was on an unapproved leave of absence because the agency had no verification of his continued inability perform his job duties. (*Id.* ¶ 24, Br. in Supp. Mot. Dismiss Ex. C [ECF No. 10-3].[4]) The July 18 Letter also warned that if his leave of absence was not approved by the third-party administrator, his absence from work would be considered unauthorized, triggering disciplinary action that could result in termination. It also advised Goldsmith to provide the

---

an exhibit, as well as a document submitted by the movant "that was not attached to or expressly incorporated in [the] complaint, so long as the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. A document is integral to a complaint where the complaint "relies heavily upon its terms and effect." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Here, Exhibit B is the VSDP Short Term Disability Leave Usage Assignment form that Goldsmith returned to HR to indicate that he was seeking short-term disability leave. This document is integral to Goldsmith's complaint because he references his completion of the form in his complaint (Compl. ¶ 15) and he does not dispute its authenticity.

[4] Exhibit C is the July 18 Letter that VDOC sent to Goldsmith explaining that his short-term disability claim was still pending and that he was currently on an unapproved leave of absence. Again, Goldsmith expressly references the July 18 Letter in his complaint and does not dispute its authenticity. (Compl. ¶ 24.) Moreover, Goldsmith's claims partially turn on VDOC's knowledge of his request for short-term disability, and this document speaks to that issue. *See Goines*, 822 F.3d at 166 (noting that a document is integral to a complaint where the claims turn on statements contained in it).

human resources office with FMLA paperwork no later than July 25, 2025. (Br. in Supp. Mot. Dismiss Ex. C.)

On September 15, 2025, VDOC sent Goldsmith a written notice of termination ("Termination Notice"), advising that his short-term disability request was never approved by the third-party administrator and that human resources had never received his FLMA paperwork despite instructing him to provide it by July 25. (Compl. ¶ 27; Br. in Supp. Mot. Dismiss Ex. A [ECF No. 10-1].[5]) The letter also advised that the third-party administrator sent Goldsmith a return-to-work notice on August 8, scheduled his return-to-work date for August 14, and ultimately denied his short-term disability claim on September 4. (Br. in Supp. Mot. Dismiss Ex. A.) Therefore, Goldsmith was terminated for misuse of sick leave. (Compl. ¶ 27, Br. in Supp. Mot. Dismiss Ex. A.)

After his initial request for short-term disability was denied but before he was terminated, Goldsmith appealed that decision with his benefit plan administrator; that appeal was still pending when VDOC fired him. (Compl. ¶ 26–27.) As it turns out, Goldsmith prevailed in his appeal, with the insurer finding that he had timely submitted all necessary documentation. (*Id.* ¶ 28.)

In April 2026, Goldsmith filed suit against VDOC, asserting claims of disability discrimination (Count I), retaliation (Count II), and failure to accommodate (Count III)—all arising under the Rehabilitation Act. *See* 29 U.S.C. §§ 701 *et seq*. On July 3, 2026, VDOC moved to dismiss the complaint in its entirety or, in the alternative, to strike the jury trial demand.

---

[5] Exhibit A is the Termination Notice sent by VDOC to Goldsmith. This document is integral to the complaint for the same reasons as Exhibits B and C. *See supra* n. 2 & 3.

(Mot. Dismiss [ECF No. 9].) The matter has been fully briefed and is therefore ripe for disposition.[6]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

### B. Motion to Strike under Federal Rule of Civil Procedure 12(f)

Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[S]triking a

---

[6] The court dispenses with oral argument after a thorough review of the relevant pleadings and the parties' written submissions.

portion of a pleading is a drastic remedy," and motions to do so are "generally viewed with disfavor." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quotations omitted). When a motion to strike is made, the moving party bears the burden to show that it is prejudiced by the challenged material. *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019); *see also* 5A Charles Alan Wright & Arthur D. Miller, Federal Practice and Procedure § 1382 (3d. ed. 2021). Any doubt about whether the challenged material should be stricken is resolved in favor of the non-moving party. S*turdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18-cv-123, 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018); Wright & Miller § 1382. "Absent a strong reason for doing so, courts will generally not tamper with pleadings." *McKague v. HSCGP, LLC*, No. 4:22-cv-00018, 2022 WL 3010472, at *2 (W.D. Va. July 29, 2022) (quoting *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003)).

## III. DISCUSSION

### A. Count I: Disability Discrimination

VDOC, as an entity receiving federal financial assistance (Compl. ¶ 6), is subject to the Rehabilitation Act. 29 U.S.C. § 794(a). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.*

"Rehabilitation Act claims for discrimination are reviewed under the *McDonnell Douglas* burden-shifting framework." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, a plaintiff bears the initial burden of

establishing a prima facie case of disability discrimination; at the motion-to-dismiss stage, however, a plaintiff need only sufficiently *allege* a prima facie case. *Rios-Grajales v. Bondi*, No. X, 2025 WL 2484169, at *9 (D. Md. Aug. 28, 2025). The elements of a disability-discrimination claim under the Retaliation Act that a plaintiff must allege are: "(1) [he] is disabled; (2) [he] was otherwise qualified for the position; and (3) [he] suffered an adverse employment action solely on the basis of [his] disability."[7] The first and second elements of a disability discrimination claim under the Americans with Disabilities Act ("ADA") are identical, and therefore, the Rehabilitation Act and the ADA impose the same requirements on a plaintiff in establishing those two elements. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999) (explaining that the "ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts[,]" and that "Congress has instructed that interpretation of Title II of the ADA and § 504 of the Rehabilitation Act be coordinated to prevent imposition of inconsistent or conflicting standards for the same requirements under the two statutes." (cleaned up) (quoting *Rogers v. Dep't of Health, Env't Control*, 14 F.3d 431, 433–34 (4th Cir. 1999))).

Under the ADA, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, a "reasonable accommodation" may include, but is not limited to, "job restructuring, part-time or modified

[7] After establishing a prima facie case of disability discrimination, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its conduct; because the *McDonnell Douglas* burden-shifting framework is an "evidentiary standard, not a pleading standard," their does not apply at the motion to dismiss stage. *Swierkiewwicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002).

work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." *Id.* § 12111(9)(B). Under the Rehabilitation Act, a plaintiff is "qualified" if he is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "Reasonable modifications and accommodations mean the same thing for the purposes of ADA Title II and the Rehabilitation Act." *Manson v. Md. State Bd. of Physicians*, No. 1:20-cv-03345, 2021 WL 2352285, at *4 n.1 (D. Md. June 9, 2021) (citing *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 371 (D. Md. 2011)).

VDOC argues that Goldsmith fails to allege that he was otherwise qualified for the position and that he was terminated solely because of his disability.[8] (Br. in Supp. Mot. Dismiss at 8–12.) Specifically, VDOC explains that short-term disability "is designed to replace a portion of an employee's income if they are *temporarily unable to work* due to a non-work-related injury or illness" (*id.* 9 n.7), and that Goldsmith has alleged that he pursued only short-term disability benefits, not any accommodation that would have allowed him to continue working. (*Id.* at 9.) VDOC argues that those factual allegations "show that [Goldsmith] was unable to work, with or without an accommodation, starting in June 2025 . . . and no factual allegations

[8] As noted, VDOC "does not argue at this stage that [Goldsmith] has failed to allege facts sufficient to show he has a disability under the Rehabilitation Act[,]" but reserves the right to raise that argument at a later stage if necessary. (Reply Br. at 2.)

exist that demonstrate he could return to his position with or without an accommodation, even after he was terminated." (*Id.* at 9–10.) The court agrees.

A disability-discrimination plaintiff is required to show that he was qualified to perform his job duties at the *time of his termination*. *See Sanders v. McLeod Health Clarendon*, No. 2:18-cv-01344, 2020 WL 3467886, at *4 (D.S.C. June 25, 2020) ("Sanders must show that he was a qualified individual with a disability at the time of his firing."); *Smith v. Noftle*, No. 1:13-cv-708, 2015 WL 3675740, at *5 (M.D.N.C. June 12, 2015) ("Plaintiff has not alleged facts sufficient to show that he was a qualified individual with a disability within the meaning of [the ADA] at the time he was terminated."). As VDOC notes, there is no allegation in Goldsmith's complaint—and no factual proffer that would show—that he could, with or without a reasonable accommodation, perform the work of a Corrections Officer as of his termination in September 2025. (*See* Reply Br. at 2.) First, Goldsmith does not allege that he requested a defined period of leave or that he indicated when he would be able to return to work. The Fourth Circuit, and courts within the circuit, have routinely held that an indefinite leave of absence from work—or any other form of accommodation of an "indefinite duration and uncertain likelihood of success"—is not a reasonable accommodation.[9] *Halpern v. Wake Forest Univ. Health Servs.*, 669 F.3d 454, 465 (4th Cir. 2012) (noting that the Retaliation Act and the ADA "do not require an employer to give a disabled employee 'an indefinite period of time to correct [a] disabling condition that renders him unqualified" (quoting *Myers v. Hose*, 50 F.3d 278, 280 (4th Cir. 1995))); *see also Starnes v. Gen. Elec. Co.*, 201 F. Supp. 2d 549, 559 (M.D.N.C.

[9] Although Goldsmith alleges that he ultimately prevailed in his request for short-term disability on appeal (Compl. ¶ 28), he does not allege when he would have been able to return to work.

2002) ("[A] reasonable accommodation is one that is 'presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.' Clearly, taking an unexplained and extended amount of time off work would not indicate that Plaintiff was presently able to perform his job functions." (quoting *Myers*, 50 F.3d at 283)); *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 3d 589, 596 (S.D.W. Va. 2008) (explaining that although sometimes medical leave may be a reasonable accommodation, "it is only reasonable where it is finite and will be reasonably likely to enable to employee to return to work" (cleaned up)). Goldsmith also does not allege that any other reasonable accommodation (*i.e.* a defined period of leave, a part-time work schedule, assistive equipment, etc.) would have allowed him to continue working as a Corrections Officer. *See Starnes*, 201 F. Supp. 2d at 559 ("Plaintiff . . . provided no time line under which his recovery and return to work could be anticipated.")

Moreover, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by" the Rehabilitation Act. *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (ADA). Because "a regular and reliable level of attendance is a necessary element of most jobs[,]" an employee "who does not come to work cannot perform *any* of his job functions, essential or otherwise." *Id.* (citations omitted). As noted above, Goldsmith does not allege that he would have been able to perform his work duties at the time of his discharge or that he would have been able to return to work and fulfill his duties after a defined period of leave. The court therefore cannot conclude that Goldsmith sufficiently alleged that he was a qualified individual.[10] *See Smith*, 2015 WL 3675740,

[10] In attempt to save his claim, Goldsmith argues that applying for short-term disability leave does not prevent him "from being considered a qualified individual or automatically estop him from asserting a Rehabilitation Act claim." (Br. in Opp. Mot. Dismiss at 14 [ECF No. 11].) To support that contention, Goldsmith cites two

at *5 ("When an employee cannot attend work, that employee cannot be, absent special circumstances not present here, a qualified individual protected by the ADA. Plaintiff has failed to allege that he was actually performing any work at all for Kaba at the time he was discharged and within the statutory period, or that he was capable of performing such work at the time of his discharge.").

Because the court agrees that Goldsmith did not sufficiently demonstrate that he was otherwise qualified for his position as a correctional officer, the court will not address the causation prong. Accordingly, his disability-discrimination claim must be dismissed.

**B. Count II: Retaliation**

"The Rehabilitation Act incorporates the anti-retaliation provision found in the ADA Amendments Act, which prohibits "discrimination against any individual because she has opposed any act or practice made unlawful by" the ADA Amendments Act. *Crockett v. Commonwealth of Virginia*, No. 5:24-cv-00084, 2026 WL 1103283, at *13 (W.D. Va. Apr. 23, 2026) (quoting 42 U.S.C. § 12203(a)). To succeed on his retaliation claim in the absence of direct evidence, a plaintiff must show that "(1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) his protected activity was causally connected to

---

cases where the plaintiffs were considered qualified even though they were on disability leave. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); *Williams v. Va. Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 471–72 (E.D. Va. 2020). The court agrees that, in some instances, medical leave is a reasonable accommodation, but such leave must be finite and allow the employee to return to work after a defined period of time. *See Kitchen*, 552 F. Supp. 3d at 596. Both plaintiffs in *Fox* and *Williams* showed that they were nonetheless qualified despite not being able to work at the time of their termination. *Fox*, 247 F.3d at 178 (explaining that plaintiff showed that his ADA claim arose out of harassment he experienced before going on leave and that he could have, and would have, continued to work but for the hostile environment); *Williams*, 451 F. Supp. 3d at 472 (noting that plaintiff requested to return to work after being granted leave under FMLA and receiving short-term disability); *see also Equal Emp. Opportunity Comm'n v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 109 (D. Md. 2019) (holding that plaintiff's request for leave was reasonable because she requested leave for a finite period and told her employer that she would return to work after giving birth).

his employer's adverse action." *Kelley v. Mayorkas*, 694 F. Supp. 3d 715, 729 (E.D. Va. 2023) (citing *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021)).

VDOC argues that Goldsmith's retaliation claim fails at the first and third elements. (Br. in Supp. Mot. Dismiss at 13–15.) Specifically, VDOC contends that application for short-term disability alone does not constitute a protected activity, and Goldsmith otherwise fails to allege that "he asked for any accommodation in conjunction with his effort to obtain short-term disability benefits." (*Id.* at 14.) VDOC also argues that Goldsmith does not allege sufficient facts to establish causation because his complaint shows "that instead of immediately terminating [Goldsmith], VDOC allowed [him] an abundance of time, about three months, to obtain short-term disability benefits to over his absences, before he was terminated." (*Id.*) The court disagrees.

"Protected activity under the ADA includes . . . submitting a request for accommodation." *Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 445 (E.D. Va. 2022) (citing *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3 562, 577 (4th Cir. 2015)). That includes requesting short-term disability leave. *Marshall v. Mark Anthony Brewing, Inc.*, No. 3:24-cv-877, 2025 WL 2779142, at *8 (D.S.C. Sep. 30, 2025) (noting that plaintiff's informing employer that he was applying for short-term disability was a protected activity); *Mickens v. Serco, Inc.*, No. 1:24-cv-1014, 2025 WL 938620, at *3 (E.D. Va. Mar. 27, 2025) (same). A request for an *unreasonable* accommodation may still constitute a protected activity, so long as the plaintiff "has a 'reasonable, good faith belief that he was entitled to request the reasonable accommodation he requested' at the time of the request." *Kelley v. Mayorkas*, 694 F. Supp. 3d 715, 730 (E.D. Va. 2023) (quoting *Dzuryachko v. Teva Pharms. USA, Inc.*, No. 2:20-cv-5217,

2022 WL 837180, at *6 (E.D. Pa. Mar. 21, 2022)). Here, the court noted that indefinite leave is not a reasonable accommodation and that Goldsmith's failure to allege that he requested a definite period of leave precluded him from demonstrating that he was qualified for his position. *See supra* Part III.A. But answering the question of whether Goldsmith had a reasonable, good-faith belief that his request was reasonable and that he was entitled to make it requires a developed factual record. At this stage, Goldsmith sufficiently alleges that his request was made in good faith, especially considering his allegations that his request was ultimately approved by his insurer on appeal. (*See* Compl. ¶ 28.)

As to causation, VDOC incorrectly imports the Rehabilitation Act's causation requirement in disability-discrimination claims—that the plaintiff suffered an adverse employment action solely based on his disability—onto its causation requirement for retaliation claims. (*See id.* at 15 ("[T]he factual allegations demonstrate [VDOC] did not take adverse actions solely because [Goldsmith] applied for STD benefits.").) *See Goodwin v. Wormuth*, 744 F. Supp. 3d 605, 620 (D.S.C. 2024) (noting that the Rehabilitation Act does not have its own anti-retaliation provision and therefore incorporates the ADA's); *Mickens*, 2025 WL 938620, at *4 (stating that disability need not be the only or sole cause of the retaliation) (citing *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 233 n.5 (4th Cir. 2016)). "[E]stablishing a 'causal relationship' at the *prima facie* stage is not an onerous burden[;] . . . [i]ndeed, 'very little evidence of a causal connection is required to establish a prima facie case of retaliation.'" *Smith*, 12 F.4th at 417 (first quoting *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018), then quoting *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 127 (4th Cir. 2021)). Importantly, retaliation plaintiffs do not have to show, at the pleading stage, that "their

protected activities were but-for causes of the adverse action." *Strothers*, 895 F.3d at 335. "The existence of relevant facts [that suggest that the adverse action occurred because of the protected activity] alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." *Roberts*, 998 F.3d at 123. A plaintiff must also "show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Id.* at 124.

Here, the allegations in the complaint, the July 18 Letter, and the Termination Notice establish that VDOC knew that Goldsmith requested short-term disability. (Compl. ¶¶ 15, 19, 24; Br. in Supp. Mot. Dismiss Attach. A, C (explaining that Goldsmith emailed his shift commanders stating that he was initiating a short-term disability claim).) The time period between Goldsmith's superiors finding out about the short-term disability claim (June 17, 2025) and Goldsmith's termination (September 15, 2025) is just short of three months, representing a moderate temporal nexus between the protected act and ultimate termination. *Mickens*, 2025 WL 938620, at *4 (holding that two months between protected activity and termination established temporal proximity); *White v. Bio-Med. Applications of S.C., Inc.*, 2024 WL 911520, at *5 (D.S.C. Mar. 4, 2024) (same). But this relatively narrow gap, on its own, cannot establish causation. *See Roberts*, 998 F.3d at 127 ("Although there is no 'bright-line rule' for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link."); *Weidman v. Exxon Mobil Corp.*, No 1:13-cv-501, 2016 WL 4051277, at *8 (E.D. Va. July 26, 2016) ("In the retaliation context for employment discrimination and retaliation claims, the Fourth Circuit requires a temporal

proximity of no more than a few months between the protected activity and retaliatory act."). Ultimately, however, the other facts Goldsmith alleges in his complaint, coupled with VDOC's knowledge of his request for short-term disability, are sufficient to allege a causal nexus at this stage. For instance, Goldsmith alleges—and the Termination Letter establishes—that the *sole* reason for his termination was misuse of sick leave arising from his short-term disability request not being approved. (Compl. ¶¶ 27, 29.) Though it is certainly possible (if not probable) that VDOC terminated Goldsmith's employment for a permissible reason, at this stage Goldsmith need not prove causation nor establish that retaliation was the sole reason for his termination. His allegations are sufficient for this claim to proceed to discovery.

In sum, Goldsmith has plausibly alleged that VDOC retaliated against him for requesting short-term disability leave, and VDOC's motion to dismiss that claim will be denied.

**C. Count III: Failure to Accommodate**

"To make out a claim of failure to accommodate[,] the plaintiff must allege that "(1) [he] was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Crockett*, 2026 WL 1102383, at *15 (citing *Hannah P.*, 916 F.3d at 337). The court has held, above, that Goldsmith did not sufficiently allege that he was a qualified person. *See supra* Part III.A. Accordingly, his failure-to-accommodate claim fails for the same reason.[11]

[11] The same logic also mandates dismissal under the third element *See supra* Part III.A (explaining that undefined periods of leave are not reasonable accommodations).

**D. Jury Trial**

Finally, VDOC argues that, should any claim go forward, Goldsmith's jury trial request should be stricken because the Rehabilitation Act provides only for recovery of equitable damages. (Br. in Supp. Mot. Dismiss at 21). Goldsmith, in turn, argues that § 504 of the Rehabilitation Act provides a plaintiff pursuing a private right of action "a full panoply of legal remedies[,] and therefore, he is entitled to a jury trial." (Br. in Opp. Mot. Dismiss at 21 (quoting *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir. 1994).) Goldsmith is correct that the Fourth Circuit, in *Pandazides*, held that disability-discrimination plaintiffs bringing suit under § 504 of the Rehabilitation Act can recover legal, or compensatory, remedies, and therefore, "*in the appropriate case*, a jury trial is constitutionally mandated under § 504." 13 F.3d at 832 (emphasis added). But Goldsmith's sole remaining claim is retaliation, not disability discrimination. *See supra* Part III.B. As noted above, "the Rehabilitation Act itself is without an anti-retaliation provision, but expressly incorporates the ADA's anti-retaliation provision, 42 U.S.C. § 12203." *Goodwin*, 744 F. Supp. 3d at 620. In the Fourth Circuit, ADA retaliation plaintiffs are "not entitled to legal damages and therefore [are] not guaranteed a jury trial by the Seventh Amendment." *Israelitt v. Enterprise Servs. LLC*, 78 F.4th 647, 661 (4th Cir. 2023). A plaintiff bringing a retaliation claim under the Rehabilitation Act is therefore likewise unable to claim legal damages and is not entitled to a jury trial. See *Goodwin*, 744 F. Supp. 3d at 620–21. Accordingly, Goldsmith's jury trial request will be stricken.

## IV. CONCLUSION

For the reasons discussed above, VDOC's motion to dismiss is granted as to Counts I and III and denied as to Count II, and VDOC's motion to strike is granted.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 18th day of August, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE